Cameron N Verdi
220 Newport Center Drive #11-122
Newport Beach, Ca 92660
Telephone (949) 887 - 0492
Facsimile: (949) 625 -7850
cameronverdi@gmail.com

*Appearing in Propria persona*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Cal. Sup. Ct Case No.: 30-2023-01320079-CU-FR-CJC:<br><br>CAMERON N. VERDI, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SIGNATURE BANK, a New York corporation; JOSEPH DEPAOLO, an individual; STEPHEN WYREMSKI, an individual; ERIC HOWELL, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 8:23-cv-01206-JVS-KES<br><br>**PLAINTIFF CAMERON N. VERDI'S OPPOSITION TO MOTION TO DISMISS**<br><br>**[DOC. 17]**<br><br>[Filed Concurrently with Declaration of Cameron N Verdi, and Supporting Exhibits]<br><br>Hearing Date: September 18, 2023<br>Hearing Time: 1:30 p.m. PST<br>Courtroom: 10C<br>Judge: Hon. James V. Selna |

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT…………...………….…………1

II.     UNDER PENALTY OF PURJURY, DECLARANT MAKES A
        MATERIAL MISREPRESENTATION TO THE
        COURT………..…………………………...…………………....2

III.    LEGAL STANDARD…………………………………………5

IV.     ARGUMENT……………………….……………………….4

        A.    First Cause of Action: Fraudulent Concealment……..…4

        B.    Second Cause of Action: Constructive Fraud……..……5

        C.    Sixth Cause of Action: Aiding and Abetting Breach of
              Fiduciary Duty…………………………………….……6

V.      RESPONSE TO FDIC-RECEIVER'S ARGUMENTS……...……7

        A.    ADMINISTRATIVE CLAIM PROCESS……………....7

        B.    CALIFORNIA RETAINS JURISDICATION AS A
              MATTER OF LAW…………………………….……9

        C.    PLAINTIFF'S CLAIMS DO NOT BELONG TO THE
              FDIC……………………………………...…………13

VI.     CONCLUSION……………………………...……...…15

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Abrahamson v. W. Sav. & Loan Ass'n,*
1994 WL 374294……………………………………………………...…15

*American Master Lease LLC v. Idanta Partners, Ltd. (2014)*
225 Cal.App.4th 1451, 1476 [171 Cal.Rptr.3d 548]………..……………….6

*Am. Nat. Ins. Co. v. F.D.I.C.,*
642 F.3d 1137, 1142 (D.C. Cir. 2011)………………………………………8

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009)…………………………………...…………….3

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
874 F.3d 1064, 1067…………………………………..………………………12

*Bank of New York v. First Millennium, Inc.,*
607 F.3d 905, 921 (2d Cir. 2010)…………………………………………7

*Barnes v. Harris,*
783 F.3d 1185, 1193 (10th Cir. 2015)………………………..…………14

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 570 (2007)……………………………………………………3

*Boschma v. Home Loan Center, Inc. (2011)*
198 Cal.App.4th 230, 248 [129 Cal.Rptr.3d 874]………………..………..4

Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco
Cty.,
137 S. Ct. 1773, 1781 (2017)………………………………………………12

*Bullion Services Inc. v. Valley State Bank,*
50 F.3d 705, 708 (9th Cir. 1995)…………………………….……10, 11

*Burger King,*
471 U.S. at 475…………………………………..…………………………13

*Cooper v. Pickett,*
137 F.3d 616, 625 (9th Cir. 1997)………………………………...……5

*Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.),*
42 F.3d 1541, 1548 (9th Cir. 1994)………………………………………..5

*FDIC v. de Jesus Velez,*
678 F.2d 371, 374 (1st Cir. 1982)……………………………...……9

*FDIC v. Glickman,*
450 F.2d 416, 418 (9th Cir. 1971)……………………………...…10

*FDIC v. Sumner Financial Corp.,*
602 F.2d 670, 679 (5th Cir. 1979)……………………………..10

*FDIC v. Nichols,*
885 F.2d at 636…………………………………….…………………10

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.,*
902 F. Supp. 2d 476, 501 (S.D.N.Y. 2012)…………………………….8

*Goodyear,*
564 U.S. at 919……………………………………….……………12

*Hayes v. Gross,*
982 F.2d 104, 109-10 (3d Cir. 1992)…………………………….…15

*Helicopteros Nacionales,*
466 U.S. at 416…………………………………………...………13

*Howard v. Haddad,*
916 F.2d 167, 169-70 (4th Cir. 1990)………………………………14, 15

*Huggins v. FDIC,*
No. 07 CV 5313 RJD VPP,
2010 WL 3926263, at *3 (E.D.N.Y. Sept. 29, 2010)…………..……...……7

*In re Sunrise Sec. Litig.,*
916 F.2d 874, 889 (3d Cir. 1990)………………………………………..14

*In re Washington Bancorporation v. FDIC*,
Civ. No. 95-1340 (RCL), 1996 U.S. Dist. LEXIS 3876, at *55-56(D.D.C.
Mar. 19, 1996)……………………………………..…………………………….10

*J. McIntyre Machinery, Ltd. v. Nicastro,*
564 U.S. 873, 880 (2011)……………………………..………………………13

*JPMorgan Chase Bank, Nat. Ass'n v. Nell,*
No. 10-CV-1656 RRM, 2012 WL 1030904,
at *7-8 (E.D.N.Y. Mar. 27, 2012)……………………………………..….…7

*Levin v. Miller,*
763 F.3d 667, 672 (7th Cir. 2014)…………………………………....……..14

*Lubin v. Skow,*
382 F. App'x 866, 870-71 (11th Cir. 2010)………………………………..14

*Mavrix Photo,*
647 F.3d at 1223………………………………………………………………12

*Mill Creek Group, Inc. v. FDIC,*
136 F. Supp. 2d36, 48 (D. Conn. 2001)………………….………………10, 11

*Moore v. Kayport Package Express, Inc.,*
885 F.2d 531, 540 (9th Cir. 1989)……………………………………..………5

*Morrone ex rel. Arotech Corp. v. Erlich,*
2011 WL 1322085, at *5 (E.D.N.Y. Mar. 31, 2011)………………………14

*Nasrawi v. Buck Consultants LLC (2014)*
231 Cal.App.4th 328, 343 [179 Cal.Rptr.3d 813]………..…………………6

*Nials v. Bank of Am.,*
No. 13 CIV. 5720 AJN, 2014 WL 1174504,
at *4-6 (S.D.N.Y. Mar. 21, 2014)………………………………………….....7

*Nicastro,*
564 U.S. 873 at 884…………………………………...……………………13

*O'Melveny & Meyers v. FDIC,*
512 U.S. 79, 86 (1994)…………………………………………..……13

*Pareto v. FDIC,*
139 F.3d 696 (9th Cir. 1998) .......................................................14

*Prakashpalan v. Engstrom, Lipscomb & Lack (2014)*
223 Cal.App.4th 1105, 1131[167 Cal.Rptr.3d 832]……………...……….5

*R. Power Biofuel, LLC v. Chemex LLC,*
2016 U.S. Dist. LEXIS 154727, *34 (N.D. Cal. Nov. 11, 2016)……...…….6

*Semegen v. Weidner,*
780 F.2d 727, 731 (9th Cir. 1985)…………………………….……………..6

*Vess v. Ciba-Geigy Corp. USA,*
317 F.3d 1097, 1106 (9th Cir. 2003)…………………...……………5

*Williams v. Yamaha Motor Co.,*
851 F.3d 1015, 1020 (9th Cir. 2017)…………………….…………12

*Younan v.Equifax Inc. (1980)*
111 Cal.App.3d 498, 516 fn. 14 [169 Cal.Rptr. 478]……………...…….5

*Zucker v. Rodriguez,*
919 F.3d 649 (1st Cir. 2019) .......................................................15

**STATUTES**

12 U.S.C. § 821(e)……………………………………………..9

12 U.S.C. § 1819……………………………………………..2, 9

12 U.S.C. § 1821(d)……………………...………………………8

12 U.S.C. § 1821(d)(2)(A)(i)……………………………….…13, 14

12 U.S.C. § 1821(e)……………...………………………………………….9

12 U.S.C. § 1823 (d)……………………….…………………………….…9

12 U.S.C. § 1823 (e)……………………….…………………………….…9

Cal. Code Civ.Proc. §§ 395………………………………………………...12

Cal. Code Civ.Proc. §§ 395.5……………………………………………12

Cal. Code Civ. Proc. § 410.10……………………………………….....…12

**RULES**

Federal Rule Civil Procedure 9(b)…………….……………………….…..5, 6

Federal Rule Civil Procedure 12(b)(1)…………………………….…3, 15

Federal Rule Civil Procedure 12(b)(6)…………………………….…3, 15

Local Rule. 7-3……………………………………………………………1

**OTHER AUTHORITIES**

Financial Institutions Reform, Recovery,
and Enforcement Act of 1989…………………………….……………...7, 8

Judicial Council of Cal., Civ. Jury Instns. (CACI) (2014) No. 3610……….6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

On July 12, 2023, in accordance with local rule 7-3, Plaintiff Cameron N. Verdi (hereinafter "Plaintiff") initiated a meet-and-confer request concerning his impending *Motion to Remand*. [Verdi Decl. ¶ 3] [1]

On July 13, 2023, counsel for the Federal Deposit Insurance Corporation (hereinafter "FDIC"), in its role as Receiver for Signature Bank (hereinafter "FDIC-Receiver"), Mr. Michael Delbick, Esq. (hereinafter "Mr. Delbick"), confirmed his availability for Plaintiff's meet-and-confer request and informed Plaintiff of his client's imminent *Motion to Dismiss.* [Verdi Decl. ¶ 4]

The party (i.e., Plaintiff) initiating the meet-and-confer is clearly identified within the practical context. The Plaintiff's *Motion to Remand* and the FDIC-Receiver's *Motion to Dismiss* are twin stars in a shared constellation, both arguing that this Court lacks subject matter jurisdiction. [Doc. 18 and 17, respectively.]

During the parties' meet-and-confer on July 26, 2023, Plaintiff acknowledged this practical challenge (i.e., requesting the Court to consider a *Motion to Dismiss* as premature while simultaneously having the Court review a *Motion to Remand*) and expressed the concern. [Verdi Decl. ¶ 5] Put differently, Plaintiff courteously urged Mr. Delbick to allow the Court a chance to rule on the impending *Motion to Remand* before proceeding with his client's *Motion to Dismiss*. If Plaintiff's motion succeeded (as anticipated), the FDIC-Receiver's motion would be moot. Mr. Delbick, however, politely disagreed. [Verdi Decl. ¶ 6]

On July 14, 2023, the Court issued an *Initial Order Following Filing of Complaint Assigned to Judge Selna* (hereinafter "Initial Order). [Doc. 7.] Referencing ¶ J of the Initial Order, Plaintiff, due to FDIC-Receiver's intent to file their motion concurrently alongside Plaintiff's *Motion to Remand*, was deprived the opportunity to

---

[1] Citations to the "Verdi Decl." refer to the Declaration of Cameron N. Verdi in Support of Plaintiffs' Opposition to the *Motion to Dismiss*, filed herewith.

"carefully evaluate the defendant's contentions" and cure any "curable defect." [Ibid.] Because Plaintiff was precluded from the benefit of the Court's analysis on the *Motion to Remand*, any yet-to-be-made litigation decisions (i.e., by example only, dismissing claims against Signature Bank) bear directly on the arguments set forth by the FDIC-Receiver, and would impact whether any claims ultimately alleged fall within the scope of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (hereinafter "FIRREA"), as amended, 12 U.S.C. § 1819 et seq." [Notice of Removal, Doc. 1, ¶ 10.]

If the Court does consider the merits of the FDIC-Receiver's premature and highly likely moot request, it nonetheless should be denied for several reasons set forth below. To the extent the FDIC-Receiver seeks to dismiss the claims against the Individual Defendants, the request has no merit. Accordingly, the FDIC-Receiver's request should be denied.

Nevertheless, by providing this *Opposition*, Plaintiff does not waive any rights, claims, or defenses, whether procedural or substantive, that he may have.

## II.   UNDER PENALTY OF PURJURY, DECLARANT MAKES A MATERIAL MISREPRESENTATION TO THE COURT

Declarant Donald G. Grieser (hereinafter "Mr. Grieser") declared, in relevant part:

"On April 15, 2023, Plaintiff Cameron Verdi filed an administrative claim in the amount of $250,000 with the FDIC-Receiver." [Doc.17-2, ¶6.] Such statement is patently false.

Referencing Plaintiff's (a) "draft complaint", (b) original complaint, (c) first amended complaint, and (d) proof of claim, no relief in the amount of $250,000 was ever sought. [Doc. Nos. 17-4, 1-5, 1-8, respectively.]

In an abundance of caution and prudence, Plaintiff mailed a hard copy of his proof of claim to the FDIC on June 12, 2023 (hereinafter "Proof of Claim"). [Verdi Decl. ¶ 7]

The Proof of Claim clearly stated:

"50,000.00 *subject to damages calculation." [Ibid.]

The United States Postal Service confirmed delivery of the Proof of Claim on June 17, 2023. [Verdi Decl. ¶ 8]

Mr. Grieser signed his declaration in Dallas, Texas. [Doc.17-2.] The Proof of Claim was also confirmed delivered to the FDIC's Dallas, Texas office, presumably where Mr. Grieser works as the "assigned Claims Agent". [Ibid., ¶2.]

The Plaintiff has consistently held, in filings before both this Court and before the FDIC, the damages sought <u>fall well below</u> the jurisdictional threshold of $75,000. [Doc. 18, p.9: 1-2.]

Consequently, as the claim amount remains <u>under the jurisdictional threshold</u>, the FDIC-Receiver cannot meet the well-established legal standard needed to prevent the case from being remanded to the State Court.

Nonetheless, the FDIC, along with its agents, is not immune from the legal consequences of offering false testimony. It falls upon the Court to determine the warranted and appropriate measures to prevent such future conduct.

## III.   LEGAL STANDARD

Dismissal is proper under Rule 12(b)(1) when a plaintiff fails to properly plead subject matter jurisdiction in the complaint. Fed. R. Civ. P. 12(b)(1).

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under *Twombly*, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting *Twombly*, 550 U.S. at 555). Second, assuming the veracity of well-pleaded

factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." [Ibid. at 679.]

This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." [Ibid.]

## IV.   ARGUMENT

As is evident from Plaintiff's First Amended Complaint (hereinafter "FAC"), all three causes of action against Signature Bank are based on state law. [Doc. 1-8.] [2] In the FAC, Plaintiff asserts claims for fraudulent concealment, constructive fraud, and aiding and abetting breach of fiduciary duty as to all Defendants, and breach of fiduciary duty, conspiracy to defraud, and breach of duty of loyalty as to the Individual Defendants. [Ibid.]

### A.   First Cause of Action: Fraudulent Concealment

In order to state a claim for fraudulent concealment under California law, a plaintiff must allege: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." (*Boschma v. Home Loan Center, Inc*. (2011) 198 Cal.App.4th 230, 248 [129 Cal.Rptr.3d 874].)

Referencing Plaintiff's FAC [Doc. 1-8.], the Court is directed to ¶¶ 28 – 34, 40, 51, 53, 54, 55, 90, 143, 145, 149, 178, 179, 180. Plaintiff contends the factual allegations in the FAC are sufficient to state a claim for fraudulent concealment under the standard outlined above, giving rise to an entitlement to relief.

---

[2] Signature Bank's co-defendants have not joined in the FDIC-Receiver's *Motion to Dismiss*. Therefore, Plaintiff will only address the causes of action alleged against Signature Bank, for the analysis pertaining to the present motion.

**B.      Second Cause of Action: Constructive Fraud**

In order to state a claim for constructive fraud under California law, a plaintiff must allege: (1) a fiduciary or confidential relationship; (2) nondisclosure (breach of fiduciary duty); (3) intent to deceive, and (4) reliance and resulting injury (causation)." (See, e.g., *Younan v.Equifax Inc*. (1980) 111 Cal.App.3d 498, 516 fn. 14 [169 Cal.Rptr. 478]; see also *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1131[167 Cal.Rptr.3d 832].) However, these elements conflict with the statute in at least two ways. First, the statute clearly states that no fraudulent intent (or intent to deceive) is required. Second, the statute is not limited to nondisclosure; it extends to information that is disclosed, but misleading.

"In its generic sense, constructive fraud comprises all acts, omissions and concealments involving a breach of legal or equitable duty, trust, or confidence, and resulting in damages to another. [Citations.] Constructive fraud exists in cases in which conduct, although not actually fraudulent, ought to be so treated - that is, in which such conduct is a constructive or quasi fraud, having all the actual consequences and all the legal effects of actual fraud." (*Prakashpalan,* supra, 223 Cal.App.4th at p. 1131.)

Under Federal Rule of Civil Procedure 9(b), a plaintiff must plead each element of a fraud claim with particularity, i.e., the plaintiff "must set forth more than the neutral facts necessary to identify the transaction." *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (emphasis in original) (quoting *Decker v. GlenFed, Inc*. (*In re GlenFed, Inc. Sec. Litig*.), 42 F.3d 1541, 1548 (9th Cir. 1994)). A fraud claim must be accompanied by "the who, what, when, where, and how" of the fraudulent conduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper*, 137 F.3d at 627). "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 540 (9th Cir. 1989). Statements of the time, place, and nature of the alleged fraudulent activities are sufficient, but mere conclusory allegations of fraud are not. [Ibid.] Furthermore, though allegations based on information and belief are usually insufficient, in circumstances of corporate fraud, this rule may be relaxed as to matters within the opposing party's

knowledge. [Ibid.]

However, Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Accordingly, the heightened standard "does not apply to allegations regarding the defendant's state of mind. Thus, knowledge and intent need only be alleged generally to state a valid claim." *R. Power Biofuel, LLC v. Chemex LLC*, 2016 U.S. Dist. LEXIS 154727, *34 (N.D. Cal. Nov. 11, 2016) (citing Fed. R. Civ. P. 9(b).)

Referencing Plaintiff's FAC [Doc. 1-8.], the Court is directed to ¶¶ 28 – 34, 40, 51, 53, 54, 55, 90, 125, 126, 143, 145, 147, 149, 178, 179, 180, 182, 198, 199. Plaintiff contends the factual allegations in the FAC are sufficient to state a claim for constructive fraud under the standard outlined above, giving rise to an entitlement to relief. These allegations are sufficiently specific to give Defendants notice of the "particular misconduct alleged" and the ability to defend itself against the specific charges. See *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

## C.   Sixth Cause of Action: Aiding and Abetting Breach of Fiduciary Duty

In order to state a claim for aiding and abetting breach of fiduciary duty under California law, a plaintiff must allege: (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff. (Judicial Council of Cal., Civ. Jury Instns. (CACI) (2014) No. 3610 . . .)." (*Nasrawi v. Buck Consultants LLC* (2014) 231 Cal.App.4th 328, 343 [179 Cal.Rptr.3d 813].)

"[C]ausation is an essential element of an aiding and abetting claim, i.e., plaintiff must show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered." (*American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1476 [171 Cal.Rptr.3d 548].)

Referencing Plaintiff's FAC [Doc. 1-8.], the Court is directed to ¶¶ 32, 33, 34, 58, 67, 68, 90, 113, 124, 125, 143, 145, 167, 179, 198. Plaintiff contends the factual allegations in the FAC are sufficient to state a claim for aiding and abetting breach of

fiduciary duty under the standard outlined above, giving rise to an entitlement to relief.

## V.     RESPONSE TO FDIC-RECEIVER'S ARGUMENTS

The FDIC-Receiver's motion seeks to dismiss the complaint on three separate grounds: (i) that plaintiff failed to exhaust the FDIC's administrative claim process pursuant to FIRREA; (ii) that the proper venue to hear the claims against Signature Bank is not California; and (iii) that the claims asserted belong to the FDIC. [*See generally* Doc. 17-1.]

Each argument fails for the reasons set forth below.

## A.     ADMINISTRATIVE CLAIM PROCESS

*First*, discussed in greater detail in Plaintiff's *Motion to Remand*, Plaintiff *"complied and exhausted the statutory administrative claims process removing any needed interpretation of federal law."* [Doc. 18, pp. 10 – 12: 15 – 13.]

More specifically:

"Furthermore, the FDIC- Receiver inadvertently acknowledges this fact (i.e., the administrative process being exhausted by Plaintiff) by the mere filing of the Notice of Removal. Said differently, if the administrative process was not exhausted, pursuant to 12 U.S.C. § 1821(d)(13)(D), this Court could not "exercise subject matter jurisdiction over those claims against FDIC-Receiver." [3] Therefore, the FDIC-Receiver's Notice of Removal serves as an acknowledgment by it that the administrative process had in fact been exhausted by Plaintiff." [Doc. 18, p.12: 1:7.]

*Second*, with respect to FIRREA's jurisdiction-stripping provision, the Second Circuit has directed that "[t]his provision is not an isolated edict, but is part of FIRREA's statutory scheme, which was intended to force plaintiffs with claims against failed depository institutions to exhaust administrative remedies before coming to federal court." *Bank of New York v. First Millennium, Inc*., 607 F.3d 905, 921 (2d Cir. 2010) (rejecting argument that a plaintiff was required under FIRREA to exhaust claims brought against a third-party bank). The Second Circuit further "held that, as used in FIRREA's jurisdiction-stripping provision, the word 'claim' is a term-of-art and must be construed to mean 'only claims that could be brought under the

---

[3] *JPMorgan Chase Bank, Nat. Ass'n*, 2012 WL 1030904, at *7; *Huggins*, 2010 WL 3926263, at *3; *Nials*, 2014 WL 1174504, at *6.

administrative procedures of § 1821(d), not any claim at all involving the FDIC' or, by implication, the failed bank." *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co*., 902 F. Supp. 2d 476, 501 (S.D.N.Y. 2012); see also *Am. Nat. Ins. Co. v. F.D.I.C*., 642 F.3d 1137, 1142 (D.C. Cir. 2011) (holding suit against a third-party "for its own wrongdoing, not against the depository institution for which the FDIC is receiver (i.e., Washington Mutual) . . . is not a claim within the meaning of [FIRREA] and thus is not barred").

*Third,* the FDIC- Receiver takes issue with the timing of Plaintiff's filing of his complaint. [Doc. 17-1, p. 4: 20-27.] However, in light of the following undisputed facts, the Plaintiff argues the administrative claim process has been exhausted. In this particular instance, it appears to serve merely as a delay tactic, thereby frustrating the process and wasting judicial resources.

On March 12, 2023, the FDIC issued a press release. [Doc. 18-3.]

In relevant part, the FDIC stated unequivocally:

"All depositors of the institution will be made whole. No losses will be borne by the taxpayers. **Shareholders** and certain unsecured debt holders **will not be protected**." [Ibid.] (emphasis added)

Also, on March 12, 2023, the Treasury, Federal Reserve, and FDIC issued a "Joint Press Release." [Verdi Decl. ¶ 9]

In relevant part, the Joint Press Release stated unequivocally:

"**Shareholders** and certain unsecured debtholders **will not be protected**." [Ibid.] (emphasis added)

On April 15, 2023, Plaintiff filed his claim with the FDIC. [Doc. 18-4.] Plaintiff clearly understood his claim to be a futile step considering the unequivocal position already taken by the FDIC (i.e., Plaintiff would "not be protected").

On April 18, 2023, the FDIC issued Plaintiff a letter. [Doc. 17-5.]

In relevant part, the FDIC stated unequivocally:

"**Shareholders** have a claim against the Receivership; however, they have the **lowest priority of any claim. You should contact an accountant and/or the IRS to discuss the exact requirements necessary to recognize the investment as a loss**

**for tax purposes. The FDIC does not require shareholders to file a claim with the Receiver."** [Ibid.] (emphasis added)

Given the entire scope of terms outlined in each communication and/or public statement received by the Plaintiff, it is implausible to argue that the Plaintiff's claim has not been fully addressed or exhausted.

Furthermore, the statement 'The FDIC **does not** require shareholders to file a claim with the Receiver' may leave an ordinary citizen, such as the Plaintiff, unclear about what, if anything, is required of them. [Ibid.]

The FDIC-Receiver acknowledges the mishandling of Plaintiff's claim. [Doc. 17-2, ¶¶ 7-8.] Yet, what the FDIC-Receiver failed to do was alert the Plaintiff that the 'FDIC staff initially misidentified Mr. Verdi's administrative claim. ' [Ibid.]

The FDIC-Receiver did not communicate with the Plaintiff to disregard the letter dated April 18, 2023. [Doc. 17-5.] This type of sloppy administration of the most basic duties is an example of a key reason why our financial system is under duress.

**B.    CALIFORNIA RETAINS JURISDICATION AS A MATTER OF LAW**

Under 12 U.S.C. § 1819 (Fourth), federal jurisdiction is excepted if the rights of creditors are determined by state law. Suits in which the FDIC acts in its capacity as receiver typically are said to invoke state law. 12 U.S.C. § 821(e).

The general scheme of the Federal Deposit Insurance Act indicates that Congress considered the two functions of the FDIC to be distinct. Different sections of the statute authorize the FDIC to act as receiver [4] or corporation [5]. See *FDIC v. de Jesus Velez*, 678 F.2d 371, 374 (1st Cir. 1982).

In the Banking Act of 1935, Congress addressed the proper functioning of the FDIC as insurer; it was in this context that Congress conferred federal jurisdiction and **excepted** cases involving the FDIC as receiver.

---

[4] *See* 12 U.S.C. § 1821(e).

[5] *See*, e.g., 12 U.S.C. § 1823(d), (e).

9

It can be reasonably inferred; Congress did not intend federal jurisdiction in all suits against the FDIC-receiver. As stated above, Congress construed an FDIC with two capacities and intended federal jurisdiction only when the FDIC acted in its corporate capacity. If it had intended otherwise, Congress could have drafted the statute to provide federal jurisdiction for all suits against the FDIC.

In *Bullion Services Inc. v. Valley State Bank*, the court held that "Congress created two distinct entities with two entirely different purposes." [6]

In *FDIC v. Nichols*, the court held that "under federal law, the FDIC is empowered to act in 'two entirely separate and distinct capacities' in proceedings involving an insured state bank[.]" [7]

In its corporate capacity, the FDIC's "primary responsibility is to insure bank deposits and to pay depositors when an insured bank fails." [8] The FDIC in its corporate capacity is "the agency of the United States that operates as regulator and corporate insurer of depository institutions." [9]

The "FDIC Receiver, on the other hand, 'act[s]as a receiver for an insolvent state bank ...possessing all the rights, powers, and privileges granted by State law to a

---

[6] *50 F.3d 705, 708 (9th Cir. 1995).*

[7] 885 F.2d at 636 (citing *FDIC v. Sumner Financial Corp.*, 602 F.2d 670, 679 (5th Cir. 1979))(internal quotations omitted); *FDIC v. Glickman*,450 F.2d 416, 418 (9th Cir. 1971) (same); *In re Washington Bancorporation v. FDIC*, Civ. No. 95-1340 (RCL), 1996 U.S. Dist. LEXIS 3876, at *55-56(D.D.C. Mar. 19, 1996) ("FDIC-C is separate and distinct from FDIC-R; FDIC-C is neither in privity with FDIC-R, nor is it the alter ego of the same.").

[8] *Bullion, 50 F.3d at 708.*

[9] *Mill Creek Group, Inc. v. FDIC, 136 F. Supp. 2d36, 48 (D. Conn. 2001).*

receiver of a State bank.'" [10] "Although the paths of the two entities cross often, the law treats them as distinct." [11]

The Plaintiff argues this case should be returned to the Superior Court of California, County of Orange. However, if a remand order is not issued, the Plaintiff contends that the FDIC-Receiver should undergo adjudication of this case before this Court for the reasons described below.

(i)    Undisputable Fact 1:

On July 8, 2020, Signature Bank issued a press release publicly boasting about its extensive California roots, specifically in the San Francisco, Los Angeles, and Orange County territories. [Doc. 1-8, ¶¶ 10 – 13.] [Verdi Decl. ¶ 10]

The press release, in relevant part, quoted Joseph J. DePaolo, President and Chief Executive Officer (i.e., a named individual defendant) of Signature Bank saying:

"While our roots date back 20 years to our New York City inception as an entrepreneurial start-up commercial bank, Signature Bank has quickly grown from our initial beginnings in Manhattan and Brooklyn. First, we expanded into the greater metropolitan-New York area, and then, **16 years later, we established operations on the West Coast in 2017**. With our proven single-point-of-contact banking model at our core, we realized the vast opportunity for bankers and clients alike on the West Coast." (emphasis added)

(ii)    Undisputable Fact 2:

Plaintiff is a long-time citizen of California. [Doc. 1-8, ¶8.][Verdi Decl. ¶ 11]

(iii)    Undisputable Fact 3:

On June 5, 2017, Signature Bank registered with the California Secretary of State to do business in California. [Verdi Decl. ¶ 12]

(iv)    Undisputable Fact 4:

Plaintiff has no contact or connection with the state of New York or District of Columbia. [Verdi Decl. ¶ 13]

---

[10] *Bullion, 50 F.3d at 708.*

[11] *Mill Creek Group, Inc., 136 F. Supp. 2d at 48*(internal citations and quotations omitted).

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (quoting *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017)). "California authorizes its courts to exercise jurisdiction 'to the full extent that such exercise comports with due process.'" Id. (citing Cal. Civ. Proc. Code § 410.10). Cal. Civ. Proc. Code § 410.10 provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Accordingly, "the jurisdictional analyses under [California] state law and federal due process are the same." *Axiom Foods*, 874 P.3d at 1067 (quoting *Mavrix Photo*, 647 F.3d at 1223).

In the present case, facts to which the FDIC-Receiver cannot dispute, jurisdiction over Defendants is appropriate, inter alia, under Cal. Code Civ. Proc. § 410.10. At all times alleged herein, one or more Defendants were residents of, or were doing business in, the State of California, County of Orange. Also, venue in Orange County Superior Court is proper pursuant to Cal. Code Civ.Proc. §§ 395 and 395.5 in that at all times alleged herein, one or more Defendants were residents of, or were doing business in, the State of California, County of Orange. [Doc. 1-8, ¶¶ 4-5.]

Signature Bank has relationship with California and has performed acts which implicate California law or the California long-arm statute. Signature Bank is registered to do business in the State of California; conducts and transacts business in the State of California; owns, leases, or manages real property in the State of California; has bank accounts in the State of California; insures persons and entities in the State of California; has employees in the State of California; and pays taxes in the State of California. Signature Bank has purposefully availed itself of the privilege of conducting business in the State of California. [Ibid., ¶13.]

In order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear*, 564 U.S. at 919).

"[I]t is the defendant's purposeful availment that makes jurisdiction consistent with traditional notions of fair play and substantial justice." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). "Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *Burger King*, 471 U.S. at 475. "The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct." *Nicastro*, 564 U.S. 873 at 884.

A non-resident defendant is subject to general jurisdiction when the defendant's contacts with the forum state are substantial or continuous and systematic enough that the defendant may be haled into court in the forum. *Helicopteros Nacionales*, 466 U.S. at 416.

Because, as the receiver, the FDIC assumes a bank's claims (i.e., Signature Bank) and becomes subject to defenses against these claims, California is the appropriate jurisdiction for Plaintiff's claims. [12]

## C.    PLAINTIFF'S CLAIMS DO NOT BELONG TO THE FDIC

*First*, the FDIC-Receiver argues that Plaintiff's direct claims against Signature Bank and certain former Signature Bank officers belong to the FDIC-Receiver. [Doc. 17-1, pp. 12 - 13: 27 – 7.] This assertion is wrong as a matter of law.

The FDIC-Receiver has no authority under FIRREA, Second Circuit case law, or the U.S. Constitution to usurp such claims. FIRREA provides only that, as receiver, the FDIC shall succeed to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution ***with respect to the institution and the assets of the institution***[.]" 12 U.S.C. § 1821(d)(2)(A)(i). This section "transfers to the FDIC only stockholders' claims with respect to . . . the assets of the institution—in other words, those that investors . . . would pursue ***derivatively*** on

---

[12] *O'Melveny & Meyers v. FDIC*, 512 U.S. 79, 86 (1994).

behalf of the failed bank." *Levin v. Miller*, 763 F.3d 667, 672 (7th Cir. 2014). Because of this limitation, courts "read § 1821(d)(2)(A)(i) as allocating claims between the FDIC and the failed bank's shareholders rather than transferring to the FDIC **every investor's claims of every description**." [Ibid.] Courts thus routinely distinguish between derivative claims and direct claims in determining which shareholder claims the FDIC assumes when a bank fails, and hold that the FDIC **assumes only derivative claims** of current shareholders. See, e.g., *Barnes v. Harris*, 783 F.3d 1185, 1193 (10th Cir. 2015) (concluding that, under FIRREA, the FDIC owned shareholders' derivative claims but not shareholders' direct claims); *Lubin v. Skow*, 382 F. App'x 866, 870-71 (11th Cir. 2010) (same); *In re Sunrise Sec. Litig.*, 916 F.2d 874, 889 (3d Cir. 1990) (same).

In this present case, Plaintiff has not asserted derivative claims. [*See generally,* Doc. 1-8.]

Indeed, *Pareto v. F.D.I.C.*, which the FDIC-Receiver cites, applied this critical distinction between direct and derivative claims, noted that plaintiff "did [not] allege he was fraudulently induced to buy or sell stock" (which is exactly what this action concerns), and held that "[p]laintiff did not have standing to assert [his] **derivative** action against the FDIC and the former directors of the bank." 139 F.3d 696, 700-01 (9th Cir. 1998)(emphasis added).

As the Seventh Circuit in *Levin* observed, "[n]o federal court has read [FIRREA]" to "transfer to the FDIC all claims held by any stockholder of a failed bank." 763 F.3d at 672. Where, as here, a shareholder alleges that defendants made false representations that induced him to pay artificially inflated prices for his stock, see FAC, Doc. 1-8 at ¶¶ 40, 55, "[t]here is no compensable injury to the corporation" and, consequently, the claims are direct—not derivative—and the class retains the ability to litigate them, notwithstanding the FDIC receivership. *Howard v. Haddad*, 916 F.2d 167, 169-70 (4th Cir. 1990); see also *Morrone ex rel. Arotech Corp. v. Erlich*, 2011 WL 1322085, at *5 (E.D.N.Y. Mar. 31, 2011) (holding that where misstatements allegedly artificially inflated a company's stock, "any injury due to these omissions accrued to shareholders individually at the time of purchase.").

<u>Significantly</u>, the FDIC-Receiver does not cite any case where the FDIC has succeeded to shareholders' direct claims under the federal securities laws. This is because <u>courts have consistently held that investors retain the ability to pursue such claims even after a failed bank enters receivership under FIRREA</u>. See, e.g., *Howard*, 916 F.2d at 169-70 (holding that federal securities fraud claims are direct claims not barred by FIRREA); *Hayes v. Gross*, 982 F.2d 104, 109-10 (3d Cir. 1992) (same); *Abrahamson v. W. Sav. & Loan Ass'n*, 1994 WL 374294, at *7 (D. Ariz. Jan. 24, 1994) (same).

The authority on which FDIC-Receiver relies does not counsel otherwise. It cites *Zucker v. Rodriguez*, 919 F.3d 649 (1st Cir. 2019), yet *Zucker* is inapposite—it was not a case "alleging fraud or one to enforce the securities laws," but rather claims for negligence and breach of fiduciary duty. [Ibid. at 660] (recognizing policy considerations, including maintaining private parties' incentive to bring securities fraud claims). The district court held those claims belonged to the FDIC, but cautioned that its ruling was "a limited one" that "applies only to claims like those before [the court]," "do[es] not establish any broader principles," and that "future claims by holding companies and other shareholders of banks in FDIC receivership will need to be evaluated on their own terms." [Ibid. at 656.]

## VI.        CONCLUSION

For these reasons, the Plaintiff respectfully requests that the Court deny the FDIC- Receiver's motion to dismiss this case pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and for such other and further relief as is just and appropriate.

DATED:   August 14, 2023

Respectfully submitted,



/s/ *Cameron N Verdi* /s/
Cameron N Verdi
Plaintiff

# CERTIFICATE OF COMPLIANCE

The undersigned, for Plaintiff Cameron N. Verdi certifies that his opposition brief, contains 4,753 words, which complies with the word limit of L.R. 11-6.1.

DATED:   August 14, 2023

Respectfully submitted,


_/s/ Cameron N Verdi /s/_
Cameron N Verdi
Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August 2023 I caused the foregoing document described as PLAINTIFF CAMERON N. VERDI'S OPPOSITION TO MOTION TO DISMISS, DECLARATION IN SUPPORT, AND SUPPORTING EXHIBITS to be submitted for electronic filing through the Court's CM/ECF system and accordingly served on all parties' counsel of record having a CM/ECF electronic filing account. The aforementioned document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. Counsel of record are requested to be registered e-filers, and, as such, are automatically e-served with a copy of the documents upon confirmation of filing.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

EXECUTED this 18th day of August 2023, at Newport Beach, California.

*/s/ Cameron N Verdi /s/*

Name: Cameron N Verdi