**MORTGAGE RECOVERY LAW GROUP, LLP**
MICHAEL H. DELBICK (State Bar No. 139200)
550 North Brand Boulevard, Suite 1100
Glendale, California 91203
Telephone: (818) 630-7900
Facsimile: (818) 630-7920
e-mail: mdelbick@themrlg.com

**WOLLMUTH MAHER & DEUTSCH LLP**
RYAN A. KANE (*Admitted Pro Hac Vice*)
ADAM M. BIALEK (*Admitted Pro Hac Vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
e-mail: rkane@wmd-law.com
e-mail: abialek@wmd-law.com

Attorneys for Federal Deposit
Insurance Corporation as Receiver
for Signature Bank

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON N. VERDI,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SIGNATURE BANK, et al.,<br><br>Defendants. | Case No. 8:23-cv-01206-JVS-KES<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Hon. James V. Selna<br><br>Date: September 18, 2023<br>Time: 1:30 p.m. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ................................................... 1

ARGUMENT........................................................ 3

   I.    This Court should dismiss this case because Plaintiff failed to exhaust the FIRREA claims process. ..........................................3

   II.   Plaintiff does not dispute that after exhaustion of the FIRREA claims process, only the U.S. District Courts for the District of Columbia or the Southern District of New York have subject matter jurisdiction..........6

   III.  The Court should dismiss this case because Plaintiff's claims belong to the FDIC-R under Section 1821(d)(2)(A)(i)..........................................7

   IV.  Plaintiff's other arguments are irrelevant to the FDIC-R's motion to dismiss................................................................11

CONCLUSION ..................................................12

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Abrahamson v. W. Sav. & Loan Ass'n*,
   1994 WL 374294 (D. Ariz. Jan. 24, 1994).......................................................8, 9

5

*Am. Nat. Ins. Co. v. F.D.I.C.*,
   642 F.3d 1137 (D.C. Cir. 2011) .......................................................................3, 4

6

7

*Am. W. Bank Members v. Utah*,
   Case No. 2:16-CV-326, 2023 WL 4108352 (D. Utah June 21, 2023) ............8, 11

8

*Bank of New York v. First, Millennium, Inc.*,
   607 F.3d 905 (2d Cir. 2010) .................................................................................3

9

*Barnes v. Harris*,
   783 F.3d 1185 (10th Cir. 2015) ............................................................................8

10

11

*Bullion Servs. v. Valley State Bank*,
   50 F.3d 705 (9th Cir. 1995) ..................................................................................7

12

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*,
   902 F. Supp. 2d 476 (S.D.N.Y. 2012)...............................................................3, 4

13

14

*Morrone v. Erlich*,
   2011 WL 1322085 (E.D.N.Y. Mar. 31, 2011) ....................................................9

15

*Hayes v. Gross*,
   982 F.2d 104 (3d Cir. 1992) ..............................................................................8, 9

16

17

*Howard v. Haddad*,
   916 F.2d 167 (4th Cir. 1990) .............................................................................8, 9

18

*In re Sunrise Sec. Litig.*,
   916 F.2d 874 (3d Cir. 1990) ..................................................................................8

19

20

*Levin v. Miller*,
   763 F.3d 667 (7th Cir. 2014) ............................................................................9, 10

21

*Lubin v. Skow*,
   382 F. App'x 866 (11th Cir. 2010) ........................................................................8

22

23

*MTB Enters. v. ADC Venture 2011-2, LLC*,
   780 F.3d 1256 (9th Cir. 2015) ...............................................................................7

24

*Pareto v. FDIC*,
   139 F.3d 696 (9th Cir. 1998) .................................................................................8

25

26

*Valencia v. Sharp Elecs. Corp.*,
   561 F. App'x 591 (9th Cir. 2014).........................................................................5

27

28

*Vinegar v. United States Marshals Serv.*,
   Case No. CIV. 95-01999-R, 1996 WL 227860 (S.D. Cal. Mar. 27, 1996) ...........5

*Zucker v. Rodriguez*,
   919 F.3d 649 (1st Cir. 2019).......................................................................*passim*

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(1)...................................................................1, 12, 13

Fed. R. Civ. P. 12(b)(6)...................................................................1, 12, 13

Fed. R. Civ. P. 17(a) .............................................................................1, 12

**Statutes**

12 U.S.C. § 1819.......................................................................................12

12 U.S.C. § 1821.................................................................................*passim*

28 U.S.C. § 1332.......................................................................................12

28 U.S.C. § 1441.......................................................................................12

Cal. Civ. Proc. Code § 410.10....................................................................6

The FDIC-R submits this Reply Memorandum of Points and Authorities in further support of its Motion to Dismiss this case under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## INTRODUCTION

Plaintiff's opposition ("Opp.") fails to rebut the FDIC-R's demonstration that (i) this Court lacks subject matter jurisdiction because Plaintiff failed to exhaust FIRREA's mandatory administrative claims process before filing this action and even if, arguendo, he had exhausted that process, he failed to bring this action in one of the only two courts with jurisdiction to hear the claims here with respect to Signature; and (ii) Plaintiff lacks standing because he is not the real party in interest to assert the claims in his complaint, which are owned by the FDIC-R under 12 U.S.C. § 1821(d)(2)(A)(i) (the "Succession Clause").

*First*, Plaintiff fails to rebut the sworn testimony of the FDIC-R's Claims Agent that Plaintiff's administrative claim is still pending review by the FDIC-R and no determination has been made to date. Plaintiff points to public press releases on March 12, 2023, Opp. at 8, from the FDIC-R, but they predate his claim and say nothing about disallowing his claim.[2] Significantly, Plaintiff does not point to any specific language that he claims constituted a denial of his claim. Similarly, Plaintiff's reliance on the FDIC-R's April 18 letter advising him of shareholder rights ("Shareholder Rights Letter")[3] plainly does not disallow his claims for tort damages nor rebut the Claims Agent's declaration that the Shareholder Rights Letter disallows no claims. Further, Plaintiff's reliance on his supplemental June 12 proof of claim in

---

[1] All capitalized terms and abbreviations not defined herein shall have the meaning set forth in the FDIC-R's Memorandum of Points and Authorities in support of its Motion to Dismiss [ECF No. 17-1] ("Mot.").

[2] The press releases are from March 12, 2023. *See* Decl. of Plaintiff Cameron N. Verdi in Supp. of Mot. to Remand ("Verdi Remand Decl."), Ex. A [ECF No. 18-3] (March 12, 2023 Press Release); Decl. of Plaintiff Cameron N. Verdi in Supp. of Opp. to Mot. to Dismiss ("Verdi MTD Decl."), Ex. E [ECF No. 22-7] (March 12, 2023 Joint Press Release).

[3] *See* Grieser Decl., Ex. C [ECF No. 17-5].

the amount "$50,000 * subject to damages calculation" ("POC") is misplaced.[4] Plaintiff's POC demonstrates that Plaintiff knew his claim had not been denied by the Shareholder Rights Letter; had it been, Plaintiff would not have needed to file the POC. Also, Plaintiff mistakenly believes that the POC shows his claim does not meet the damages threshold for this Court's jurisdiction. Plaintiff apparently fails to understand that jurisdiction here is not based on diversity jurisdiction, but rather on the FDIC-R's unique removal rights under federal law.[5] Succinctly stated, nothing in the press releases or the FDIC-R letters shows that the FIRREA claims process has been exhausted. Plaintiff's failure to do so before filing this lawsuit deprives this Court of subject matter jurisdiction.

*Second*, Plaintiff fails to address his failure to sue in the proper jurisdiction under FIRREA § 1821(d)(6)(A) because he has no answer. He instead asks this Court to ignore FIRREA and retain jurisdiction by following California's long-arm statute, something which this Court lacks authority to do. Congress has vested specific courts with jurisdiction over disallowed claims involving Signature under FIRREA, and this Court is not one of them.

*Third*, Plaintiff argues that the FDIC-R succeeds only to derivative claims, and not direct stockholder claims, regardless of the claims' relation to the failed bank or its assets. In doing so, he asks this Court to interpret the Succession Clause by applying a direct-derivative distinction which appears nowhere in the language of § 1821(d)(2)(A). *Zucker v. Rodriguez*, 919 F.3d 649, 657 (1st Cir. 2019). The plain language of the Succession Clause applies to claims "with respect to the [Bank] and the assets of the [Bank]," regardless of whether they are deemed direct or derivative. As detailed in the FDIC-R's opening memorandum, Plaintiff's claims are

---

[4] Verdi MTD Decl., Ex. C [ECF No. 22-5] (June 12, 2023 POC).

[5] Plaintiff's POC was not yet uploaded in the FDIC's non-depositor claim system due to a backlog of claims at the time of the Claim Agent's original declaration. *See* Reply Declaration of Donald G. Grieser, dated August 30, 2023 ("Grieser Reply Decl."), ¶ 5.

indisputably "with respect to" the Bank and its assets because they center on Defendants' alleged malfeasance that depressed the value of Signature's assets, left Signature's stock valueless, and caused Signature's failure.

In sum, Plaintiff's complaint is fundamentally flawed. Plaintiff does not own the claims he seeks to assert. Plaintiff has not exhausted the FIRREA claims process before bringing this action. Plaintiff sued in a court that can never have jurisdiction over his claims. Each flaw provides an independent basis to grant the FDIC-R's motion to dismiss.

## ARGUMENT

**I.    This Court should dismiss this case because Plaintiff failed to exhaust the FIRREA claims process.**

In the FDIC-R's motion, it demonstrated that Plaintiff's claims are subject to the FIRREA claims process. Mot. at 8-10. Notwithstanding his filing of both an online administrative claim and the POC, Plaintiff now contends that his claims are not subject to the FIRREA claims process. Plaintiff is wrong.

Plaintiff cites three cases regarding the scope of claims subject to the FIRREA claims process, Opp. at 7-8, but they are all inapposite. The interpleader claim regarding a securitization trust in *Bank of New York v. First, Millennium, Inc.* did not involve, as here, a stockholder's claims against a failed bank and its directors and officers, but rather "the interpleader properly represented a claim *by* the FDIC against the trust corpus." 607 F.3d 905, 912 (2d Cir. 2010) (emphasis in original). The court held that the claims were not subject to FIRREA because the "noteholders are not creditors of [the failed institution], and they assert no claims against either that failed institution or against the FDIC. They hold notes issued by the trust, an independent and still solvent entity." *Id.* at 920. Plaintiff's two other cases, *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476 (S.D.N.Y. 2012) and *Am. Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137 (D.C. Cir. 2011), are similarly inapposite. Both cases considered whether claims against a third party, JPMorgan (not the FDIC-R or the

failed bank's directors and officers), were subject to the FIRREA claims process. *Fed. Hous. Fin. Agency*, 902 F. Supp. 2d at 501-02; *Am. Nat. Ins. Co.*, 642 F.3d at 1142.

The FDIC-R also demonstrated that Plaintiff did not exhaust the FIRREA claims process before filing this action in that the FDIC-R had not disallowed Plaintiff's administrative claim before he filed his complaint on April 17, 2023. The FDIC-R neither disallowed Plaintiff's administrative claim before he filed his complaint, nor has the FDIC-R yet made any determination regarding that claim. Mot. at 3-4, 8-10. Plaintiff's arguments that he exhausted the FIRREA claims process all fail.

*First*, Plaintiff relies on an unfounded reading of correspondence with an FDIC-R attorney that he claims supports exhaustion. Opp. at 7 (citing MPA in Supp. of Mot. to Remand [ECF No. 18] at 10-12). The plain language of this letter refutes Plaintiff's argument that he exhausted the FIRREA claims process. The FDIC-R's letter states: "[B]ecause your claims are asserted against Signature . . . you were required to exhaust the mandatory statutory receivership claims process set forth under FIRREA **before commencing any judicial action on those claims; and you have not done so**." Verdi Remand Decl., Ex. C [ECF No. 18-5] (May 9, 2023 Letter) at 2 (emphasis added). Far from disallowing Plaintiff's administrative claim, Plaintiff was put on notice that "[u]nless and until th[e] mandatory claims process is properly exhausted," his court claims could be dismissed under FIRREA. *Id.*

*Second*, Plaintiff's argument that the FDIC-R's filing of a Notice of Removal is an "inadvertent[]" acknowledgment that Plaintiff exhausted the claims process, Opp. at 7, also is wrong. The FDIC-R appeared for the purposes of removal only and expressly reserved all of its rights and defenses when it removed this action to this Court. *See* Notice of Removal [ECF No. 1] at 1. As many courts have found, the FDIC, as here, can remove a state court action to federal court and then move to dismiss the action for lack of subject matter jurisdiction based on a failure to exhaust

the FIRREA claims process. Mot. at 9 (collecting cases); *see also Valencia v. Sharp Elecs. Corp.*, 561 F. App'x 591, 593 (9th Cir. 2014) ("[s]ubject matter jurisdiction can never be forfeited or waived, and federal courts have a continuing, independent obligation to determine whether subject matter jurisdiction exists."); *Vinegar v. United States Marshals Serv.*, Case No. CIV. 95-01999-R, 1996 WL 227860, at *1 n.1 (S.D. Cal. Mar. 27, 1996) ("A party who removes an action from a state to a federal court does not thereby waive any of his Rule 12(b) defenses or objections.").

*Third*, Plaintiff's argument that public press releases and the FDIC-R's Shareholder Rights Letter show he exhausted the FIRREA claims process is misguided. Opp. at 7-9. Plaintiff conflates statements in the press releases and the Shareholder Rights Letter about how shareholders come last under the FIRREA priority scheme with the mandatory requirement under FIRREA to file an administrative claim and await its determination before suing. Moreover, the press releases, which were published over a month *before* Plaintiff filed his administrative claim, say nothing about his yet to be filed administrative claim. *See* Verdi Remand Decl., Ex. A; Verdi MTD Decl. Ex. E. As for the Shareholder Rights Letter, Plaintiff does not dispute that the letter disallowed none of his claims. The language that Plaintiff quotes from the Shareholder Rights Letter, Opp. at 8-9, like the press releases, simply explains how shareholders have the lowest priority under the FIRREA priority scheme. *See* Grieser Decl., Ex. C. Plaintiff ignores the difference between being paid the value of his lost equity as a shareholder under the FIRREA priority scheme and filing a claim against the failed institution seeking tort damages based on its alleged acts and omissions.

Ultimately, nothing in the press releases or the Shareholder Rights Letter excuses Plaintiff from complying with the jurisdictional requirement that he not only file a claim as part of the FIRREA claims process, but also exhaust that process before suing. Mot. at 8-10. In addition, Plaintiff does not dispute—nor could he—that even if the April 18 Shareholder Rights Letter disallowed his claims (which it did not), he

filed this action on April 17 *before* receiving that letter.

*Last*, Plaintiff's POC, which Plaintiff relies on to wrongfully charge the FDIC-R's declarant with false testimony,[6] highlights the inconsistency between his actions and his litigation position. The filing of his POC on June 12 contradicts his current claim that the April 18 Shareholder Rights Letter was a denial of his administrative claim. Nor does Plaintiff explain why he filed a supplemental proof of claim on June 12 to lower the amount of his claim from $250,000 to $50,000, which is below the threshold for federal diversity jurisdiction. Apparently, Plaintiff mistakenly believed that removal jurisdiction would be based on diversity. Regardless of Plaintiff's motivations, the June 12 POC referenced his prior claim and was submitted months after the April 18 Shareholder Rights Letter and the correspondence with the FDIC-R's attorney that he now incorrectly argues disallowed his claim. *See* Verdi MTD Decl., Ex. C. Notwithstanding Plaintiff's current position, his past conduct shows he understood that his administrative claim was still pending review by the FDIC-R.

In sum, this Court lacks subject matter jurisdiction because Plaintiff has failed to exhaust the FIRREA claims process before filing this action.

## II. Plaintiff does not dispute that after exhaustion of the FIRREA claims process, only the U.S. District Courts for the District of Columbia or the Southern District of New York have subject matter jurisdiction.

Plaintiff simply ignores FIRREA's jurisdictional limitations in § 1821(d)(6)(A), *see* Mot. at 11-12, and requests that this Court still exercise jurisdiction over his claims notwithstanding FIRREA. Opp. at 9-13. Plaintiff contends that if the Court does not grant his motion to remand, then it should retain jurisdiction under California's long-arm statute. *Id.* (citing CCP 410.10 and courts discussing its application). However, "the venue provision in § 1821(d)(6)(A) is a jurisdictional limitation on federal court review," which vests jurisdiction in only two

---

[6] Plaintiff's contention that the FDIC-R offered false testimony with respect to the amount of his claim is both factually incorrect and irrelevant to whether this Court has jurisdiction for the reasons set forth below. *See infra* Section IV.

courts: the district court for the judicial district within which the depository institution's principal place of business is located (here the Southern District of New York) or the United States District Court for the District of Columbia. *MTB Enters. v. ADC Venture 2011-2, LLC*, 780 F.3d 1256, 1259 (9th Cir. 2015). A plaintiff, like Plaintiff here, with claims that fall within the scope of FIRREA must first exhaust the FIRREA claims process, and if the claim is disallowed, the plaintiff may sue in only those two jurisdictions if it wishes to seek a *de novo* judicial determination of the claim. 12 U.S.C. §§ 1821(d)(6)(A), 1821(d)(13)(D). No other courts have jurisdiction over such claims despite the existence of a state's long-arm statute.[7]

### III.   The Court should dismiss this case because Plaintiff's claims belong to the FDIC-R under Section 1821(d)(2)(A)(i).

Plaintiff argues that the FDIC-R succeeds only to derivative claims, and not direct stockholder claims, regardless of the claims' relation to the failed bank or its assets. Opp at 13-15. This argument misses the point. As shown in the FDIC-R's opening memorandum, under the Succession Clause, the FDIC-R succeeds to a stockholder's claims "with respect to the [Bank] and the assets of the [Bank]," regardless of whether they are deemed direct or derivative. Plaintiff's claims against the FDIC-R and the former directors and officers of Signature fall within the Succession Clause because they are "with respect to" the Bank and the Bank's assets as they center on Defendants' alleged malfeasance that depressed the value of Signature's assets, left Signature's stock valueless, and caused Signature's failure.

Plaintiff's argument that the FDIC-R succeeds only to "derivative" and not "direct" stockholder claims fails to correctly apply FIRREA's text or the case law. *Compare* Opp. at 13-15, *with Zucker*, 919 F.3d at 657 ("The most basic problem for

---

[7] Plaintiff also contends that federal jurisdiction is proper only when the FDIC acts in its corporate capacity. Opp. at 9-10. Plaintiff is mistaken. The "FDIC's removal statute evidences Congress' desire that cases involving FDIC should generally be heard and decided by the federal courts." *Bullion Servs. v. Valley State Bank*, 50 F.3d 705, 707 (9th Cir. 1995) (citation omitted) FDIC corporate and FDIC as receiver are both entitled to exercise this right. *Id.* at 709.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

[this] interpretation is that the direct-derivative distinction appears nowhere in the language of § 1821(d)(2)(A).") Pre-failure, derivative claims are rights of the bank and direct claims are rights of stockholders, but once a bank fails, the statute confers on the FDIC-R "all rights" of *both* "the [failed bank]" *and* "any stockholder" of the bank "with respect to the [bank] and the assets of the [bank]." 12 U.S.C. § 1821(d)(2)(A)(i). Both derivative and direct claims belong to the FDIC-R if they are "with respect to the [bank] [or] the assets of the [bank]." And whether that is so depends on the claims' relation to the bank and its assets—considered in light of FIRREA's purpose to have the FDIC maximize recovery for, and distribute assets to, all bank stakeholders according to a priority scheme prescribed by Congress—not the claims' categorization as "direct" or "derivative" under state law. Mot. at 12-15; *Zucker*, 919 F.3d 649 at 656-57; *Am. W. Bank Members v. Utah*, Case No. 2:16-CV-326, 2023 WL 4108352, at *5-8 (D. Utah June 21, 2023).

Plaintiff's cases do not show otherwise because none save one split decision, which is not binding on this Court, analyze whether the Succession Clause contains a direct/derivative dichotomy. In some of Plaintiff's cases, the distinction between direct and derivative claims was irrelevant because the claims were derivative and the FDIC owned them regardless. *See Barnes v. Harris*, 783 F.3d 1185, 1194-95 (10th Cir. 2015); *Lubin v. Skow*, 382 F. App'x 866, 871 (11th Cir. 2010); *Pareto v. FDIC*, 139 F.3d 696, 701 (9th Cir. 1998).[8] Other cases do not consider the Succession Clause, but rather consider different issues, such as whether permitting direct suits would violate an "absolute priority" rule or generally impair the statutory mandate under FIRREA to protect and maximize the assets of the failed institution. *Hayes v. Gross*, 982 F.2d 104, 109 (3d Cir. 1992); *In re Sunrise Sec. Litig.*, 916 F.2d 874, 889 (3d Cir. 1990); *Howard v. Haddad*, 916 F.2d 167, 170 (4th Cir. 1990); *Abrahamson*

---

[8] That a court says, as did the *Pareto* court, for example, that the Succession Clause "vests all rights and powers of a stockholder of the bank to bring a derivative action in the FDIC" does not mean that the statute vests in the FDIC *only* the right to bring a derivative action. 139 F.3d at 700.

*v. W. Sav. & Loan Ass'n*, 1994 WL 374294, at *7 (D. Ariz. Jan. 24, 1994). And one of Plaintiff's cases does not even involve FIRREA. *Morrone v. Erlich*, 2011 WL 1322085, at *5 (E.D.N.Y. Mar. 31, 2011. *Howard*, *Hayes*, and *Abrahamson* also do not apply here because they addressed federal securities claims, whereas Plaintiff asserts California state law tort claims. Moreover, even if Plaintiff had asserted federal securities law violations (which he has not), allowing them to proceed would turn the congressionally mandated FIRREA claims process on its head by effectively allowing shareholders to "strategically plead" to jump the claims priority line. As the Ninth Circuit stated in *Benson* "[l]itigants cannot avoid FIRREA's administrative requirements through strategic pleading." 673 F.3d 1207, 1209 (9th Cir. 2012).

The only case that Plaintiff cites in which the court discusses the direct/derivative dichotomy in the context of the Succession Clause is the majority opinion in *Levin v. Miller*, but that opinion is both not binding on this Court and unpersuasive for several reasons.

*First*, the parties assumed the direct/derivative dichotomy applied and did not brief whether the Succession Clause requires it. And when the Court raised the issue at oral argument, it asked whether the Succession Clause should be understood to transfer to the FDIC "*all* claims held by any stockholder of a failed bank." 763 F.3d 667, 672 (7th Cir. 2014). This is the wrong question. And it is the same strawman that Plaintiff raises in his opposition. Opp. at 13-15 The FDIC-R has not taken the position that it succeeds to *all* stockholder claims. Thus, the question is not whether the Succession Clause confers on the FDIC-R *all direct stockholder claims*, regardless of whether those claims are "with respect to" the failed bank or its assets, but whether it confers on the FDIC-R *all claims that are "with respect to" the failed bank or its assets*, regardless of whether those claims are direct or derivative. The answer to the latter question is yes, because that is what the Succession Clause says.

Indeed, the parties' assumption that the direct/derivative dichotomy determined claim ownership made no sense to Judge Hamilton, as he explained in

9

his concurring opinion in *Levin*:

> The FDIC can already pursue what would be a derivative claim because the claim really belongs to the failed depository institution itself. So what does the language [in the Succession Clause] referring to "the rights . . . of any stockholder" add to the meaning and effect of the statute? The doctrine that statutes should not be construed to render language mere surplusage is not absolute, but it weighs in favor of a broader reach that could include direct claims. If "rights . . . of any stockholder" was meant to refer only to derivative claims, it's a broad and roundabout way of expressing that narrower idea.

763 F.3d at 673 (Hamilton, J., concurring). A result that allows a stockholder to recover from a limited set of bank-related assets "ahead of or on par with the FDIC," Judge Hamilton added, "turns the equities upside down." *Id.*

*Second*, the majority's only reference to the statutory test in its discussion of the direct/derivative dichotomy was one conclusory sentence: "Section 1821(d)(2)(A)(i) transfers to the FDIC only stockholders' claim 'with respect to . . . the assets of the institution'—in other words, those that investors (but for §1821(d)(2)(A)(i)) would pursue derivatively on behalf of the failed bank." *Id.* The majority did not explain *why* claims "with respect to . . . the assets of the institution" are limited to derivative claims. As the *Zucker* panel wrote, the statutory language and derivative claims are "not self-evidently synonymous." *Zucker*, 919 F.3d 649 at 657.

*Third*, the *Levin* majority's only other rationale was that using a direct/derivative dichotomy avoids the need to potentially tackle whether the statute effects a taking, an issue Plaintiff does not raise here. 763 F.3d at 672. Seeking to avoid potential arguments is no substitute for interpreting a federal statute according to its text, structure, history, and purpose. The text here explicitly confers on the FDIC-R stockholder claims, such as those of Plaintiff, with respect to a failed bank or the failed bank's assets.

Against the two-judge *Levin* majority stand the cogent analyses of the three judges in *Zucker*, Judge Hamilton in *Levin*, and the district judge in *America West*. It is simply not true, therefore, that courts routinely hold that the FDIC-R assumes only

derivative claims of current shareholders. Opp. at 14. The test is whether a stockholder's claims are "with respect to the [bank] [or] the assets of the [bank]." 12 U.S.C. § 1821(d)(2)(A)(i); *Zucker*, 919 F.3d 649 at 656-57; *Am. W. Bank Members* 2023 WL 4108352, at *5-8.[9] As set forth in the motion to dismiss, the FDIC-R established that all of Plaintiff's claims here meet this test. Mot. at 12-15. Accordingly, all of Plaintiff's claims belong to the FDIC-R under the Succession Clause.

## IV. Plaintiff's other arguments are irrelevant to the FDIC-R's motion to dismiss.

Plaintiff makes several other irrelevant arguments in response to the FDIC-R's motion to dismiss, which are briefly addressed below.

First, Plaintiff wrongfully charges that the FDIC-R's declarant makes a material misrepresentation concerning the amount of Plaintiff's administrative claim. Opp. at 2-3. Plaintiff's accusation is wrong, and the size of Plaintiff's claim is irrelevant to the motion to dismiss.

The declaration was true based on the facts known to the declarant when he executed the declaration. Plaintiff first filed his administrative claim with the FDIC-R on April 15, 2023, through the FDIC's online claims portal on the FDIC's RRMP system. Grieser Reply Decl. ¶ 3. As reflected in the case opening details for this claim, the "Total Claim Amount" is "$250,000.00." *Id.* ¶ 3; *id.* Ex. A. There is nothing false about the statement that "Plaintiff filed an administrative claim with the FDIC-Receiver on April 15, 2023, in the amount of $250,000." Grieser Decl. ¶ 6. The fact that Plaintiff supplemented his online administrative claim two months later by mailing the FDIC-R the paper POC does not render this statement false. Grieser Reply Decl. ¶ 4; Verdi MTD Decl., Ex. C. The FDIC-R has experienced a backlog

---

[9] Plaintiff's attempt to distinguish *Zucker* on the ground that it's holding was "a limited one" applying only to the claims there falls flat. *Id.* at 15. Putting aside that Plaintiff asserts similar claims here, including for breach of fiduciary duty and duty of loyalty, that the *Zucker* panel limited its holding is no reason to reject its application here.

in processing claims, particularly those received by mail, given the volume of claims received in the wake of the recent bank closings. Grieser Reply Decl. ¶ 5. Plaintiff's supplemental paper POC was not uploaded to the FDIC's non-depositor claims system of record until August 14, 2023, after the declarant executed his declaration on July 25, 2023 and the parties submitted briefing here. *Id.* Accordingly, the declaration was true and correct based on the facts known by the declarant when it was executed.

Further, Plaintiff's argument that removal to federal court is improper because, based on his revised POC, his claim amount of "$50,000" is "under the jurisdictional threshold of $75,000" is misplaced. Opp. at 3. Here, removal is based on federal question jurisdiction under 12 U.S.C. § 1819(b)(2)(B) and 28 U.S.C. § 1441(a), and the amount of damages is irrelevant. The $75,000 damages threshold concerns removal based on diversity jurisdiction. 28 U.S.C. § 1332; 28 U.S.C. § 1441(b).

Plaintiff's remaining arguments relating to his pleading of the elements for his causes of action against FDIC-R are equally irrelevant. Opp. at 4-7.[10] The FDIC-R is not seeking to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to adequately plead his claims, but because he lacks standing as he is not the real party in interest under Rule 17(a) (and for lack of subject matter jurisdiction under Rule 12(b)(1)). Mot. at 7, 12. That analysis depends on application of the Succession Clause, which as set forth above, transfers all of Plaintiff's claims in this action to the FDIC-R. As a result, whether Plaintiff has properly pleaded the elements of these claims is irrelevant to whether this action should be dismissed.

## CONCLUSION

For the above reasons and the reasons set forth in the FDIC-R's motion to dismiss, the FDIC-R respectfully requests that the Court dismiss this case in its

---

[10] Although Plaintiff limited his opposition to claims against Signature, as the FDIC-R made clear in its opening memorandum, all claims, including those asserted against the Individual Defendants, are subject to the FDIC-R's motion to dismiss and should be dismissed.

1  entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

2  Procedure, and for such other and further relief as is just and appropriate.

3

4  DATED: September 5, 2023          MORTGAGE RECOVERY LAW GROUP, LLP

5

6                                    By:  */s/ Michael H. Delbick*
                                          Michael H. Delbick
7

8                                    Ryan A. Kane (*Admitted Pro Hac Vice*)
                                     Adam M. Bialek (*Admitted Pro Hac Vice*)
9                                    WOLLMUTH MAHER & DEUTSCH LLP
                                     500 Fifth Avenue
10                                   New York, New York 10110

11                                   Attorneys for Federal Deposit Insurance
                                     Corporation as Receiver for Signature Bank
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Federal Deposit Insurance Corporation as Receiver for Signature Bank certifies that this brief contains 4,324 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 5, 2023          MORTGAGE RECOVERY LAW GROUP, LLP

By: */s/ Michael H. Delbick*
      Michael H. Delbick

Attorneys for Federal Deposit
Insurance Corporation as Receiver
for Signature Bank