Cameron N Verdi
220 Newport Center Drive #11-122
Newport Beach, Ca 92660
Telephone (949) 887 - 0492
Facsimile: (949) 625 -7850
cameronverdi@gmail.com

*Appearing in Propria persona*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Cal. Sup. Ct Case No.: 30-2023-01320079-CU-FR-CJC:<br><br>CAMERON N. VERDI, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SIGNATURE BANK, a New York corporation; JOSEPH DEPAOLO, an individual; STEPHEN WYREMSKI, an individual; ERIC HOWELL, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 8:23-cv-01206-JVS-KES<br><br>**PLAINTIFF CAMERON N. VERDI'S REPLY IN SUPPORT OF MOTION TO REMAND**<br><br>[DOC. 18.]<br><br>Hearing Date: September 18, 2023<br>Hearing Time: 1:30 p.m. PST<br>Courtroom: 10C<br>Judge: Hon. James V. Selna |

## TABLE OF CONTENTS

I. THE FDIC-RECEIVER EXERCISES AN UNDUE SENSE OF AUTHORITY ……………………………………………………1

    (i) Point One……………………………………………….2

    (ii) Point Two……………………………………..……….7

    (iii) Point Three……………………..…………………..9

    (iv) Point Four………………………..…………..…10

    (v) Point Five………………………………………..11

II. CONCLUSION…………………………………………..…12

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*Abrahamson v. W. Sav. & Loan Ass'n,*
1994 WL 374294……………………………………………………..……..5

*Am. Nat. Ins. Co. v. F.D.I.C.,*
642 F.3d 1137, 1142 (D.C. Cir. 2011)……………………………………….3

*Atherton v. FDIC,*
519 U.S. at 213 -217(1997)………………………………………..……...7, 9

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
874 F.3d 1064, 1067……………………………………...…………………10

*Barnes v. Harris,*
783 F.3d 1185, 1193 (10th Cir. 2015)………………………...…………...4

*Berg v. Leason,*
32 F.3d 422, 426 (9th Cir. 1994)………………………………..……...7

*Caterpillar, Inc. v. Williams,*
482 U.S. 386, 392 (1987)………………………………………..……..7

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.,*
902 F. Supp. 2d 476, 501 (S.D.N.Y. 2012)………………………………….3

*Federal Deposit Ins. Corp. v. Anders*,
No.S-87-430 EJG/PAN, 1991 U.S. Dist. LEXIS 20411, at*17-19 (E.D. Cal.
July 1, 1991)……………………………………………………………………8

*FDIC. v. Butcher,*
660 F. Supp. 1274, 1282 (E.D.Tenn. 1987)……………………………………9

*FDIC v. Collins*,
920 F. Supp.30, 33-35 (D, Conn. 1996)……………………………………9

*FDIC v. Crosby*,
774 F. Supp. 584,586 (W.D. Wash. 1991)……………..……….…………..9

*FDIC v. Ernst & Whinney,*
No. 3- 87-0364, 1992WL 535605, at *2-4 (E.D. Tenn. May 19, 1992)…….9

*FDIC v. Heiserman,*
839 F.Supp. 1457, 1467-68 (D. Colo. 1993)…………………………………...9

*FDIC v. Lowe,*
809 F. Supp. 856,857-58 (D. Utah 1992)……………………………………9

*FDIC v. Mijalis,*
15F.3d 1314, 1324 (5th Cir. 1994)…………………………………………..8

*FDIC v. Raffa,*
935 F. Supp. 119, 123 (D. Conn. 1995)……………………………………..8

*FDIC v. White*,
828 F. Supp. 304,308-12 (D. N.J. 1993)……………….………………9

*Franchise Tax Bd. v. Construction Laborers Vacation Trust
For Southern California*,
463 U.S. 1, 10 (1983)……………………………………………….................8

*Gaus v. Miles, Inc.,*
980 F.2d 564, 566 (9th Cir. 1992)…………………………………..…...11

*Hayes v. Gross*,
982 F.2d 104, 109-10 (3d Cir. 1992)…………………………………….…..5

*Howard v. Haddad,*
916 F.2d 167, 169-70 (4th Cir. 1990)……………………………………….4, 5

*In re Sunrise Sec. Litig.,*
916 F.2d 874, 889 (3d Cir. 1990)……………………………………………4

*Lazuka v. FDIC,*
931 F.2d 1530, 1534-35 (11th Cir. 1991)………..………………..….…12

*Levin v. Miller,*
763 F.3d 667, 672 (7th Cir. 2014)…………………………………...……3, 4

*Lubin v. Skow,*
382 F. App'x 866, 870-71 (11th Cir. 2010)……………………………………4

*Mavrix Photo,*
647 F.3d at 1223…………………………………………………………………10

*Merrell Dow Pharmaceuticals, Inc. v. Thompson,*
478 U.S. 804, 808, 106 S. Ct. 3229, 92 L. Ed. 2d
650 (1986)………………………………………………………………............7

*Mizuna, Ltd. v. Crossland Fed. Sav. Bank,*
90 F.3d 650, 657, 1996 U.S. App. LEXIS 18307, *16……………………..12

*Morrone ex rel. Arotech Corp. v. Erlich,*
2011 WL 1322085, at *5 (E.D.N.Y. Mar. 31, 2011)………………………..4

*Pareto v. FDIC,*
139 F.3d 696 (9th Cir. 1998) ......................................................................4

*RTC v. Youngblood,*
807 F. Supp. 765, 771- 74 (N.D. Ga.1992)………………………………….9

*Saratoga Sav. & Loan Asso. v. Federal Home Loan Bank,*
724 F. Supp.683, 688 (N.D. Cal. 1989)……………………………………..8

*Williams v. Yamaha Motor Co.,*
851 F.3d 1015, 1020 (9th Cir. 2017)………………………………………10

*Zucker v. Rodriguez,*
919 F.3d 649 (1st Cir. 2019) ......................................................................6

**STATUTES**

12 U.S.C. § 1819……………………………………………………….……1

12 U.S.C. § 1821(d)(13)(D)………………………………………………….11

12 U.S.C. § 1821(d)(2)(A)(i)……………………………………………3, 4, 5

12 U.S.C. § 1821(d)(2)(j)(ii)…………………………………………………..8

12 U.S.C. § 1821(p)(1)(B)……………...…………………….………………..8

28 U.S.C. § 1441(a)……………...…………………………………………....11

28 U.S.C. § 1446 (a)……………...…………………………………….…….11

28 U.S.C. § 1447 (c)……………...……………………………………..…….12

Cal. Code Civ. Proc. § 410.10……………………………………………....…10

## OTHER AUTHORITIES

Financial Institutions Reform, Recovery,
and Enforcement Act of 1989…………………………..……………........1

JOHN K. VILLA, BANK DIRECTORS', OFFICERS' AND LAWYERS'
CIVIL LIABILITIES § 1.02[A] (2004-2 Supp. 2004)………………..……...7

Plaintiff, Cameron N. Verdi (hereinafter "Plaintiff"), submits this reply in support of his *Motion to Remand* this action to the Superior Court in and for the County of Orange, pursuant to 28 U.S.C. § 1447(c). [Doc. 18.]

## I.   THE FDIC-RECEIVER EXERCISES AN UNDUE SENSE OF AUTHORITY

For the reasons detailed herein, the arguments presented by the Federal Deposit Insurance Corporation (hereinafter referred to as "FDIC"), acting in its capacity as Receiver for Signature Bank (hereinafter "FDIC- Receiver"), are both misplaced and rooted in an overreaching interpretation of the authority granted by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (hereinafter "FIRREA"), as amended, codified at 12 U.S.C. § 1819 et seq. [1]

The FDIC-Receiver has not adequately presented federal defenses necessitating the interpretation or application of federal law. Additionally, Courts have consistently upheld the use of state law over federal common law, irrespective of a bank's federal or state charter. Consequently, given the current evidence and arguments before the Court (including *infra*), the Plaintiff has fulfilled the requirements for the 'state law

---

[1] The FDIC-Receiver also misrepresents two (2) material facts:

(1) The claims alleged against Signature Bank. [*See* MPA in Opp. to Mot. to Remand (Doc. 21) at 3-4: 28-2.] This assertion is false.

The complaint only charges Signature with fraudulent concealment, constructive fraud, and aiding and abetting breaches of fiduciary duty. [Doc. 1-8, FAC, specifically ¶ 141 –152, ¶153-163, ¶195-201.]

(2) The FDIC- Receiver alleged Plaintiff filed "an administrative claim for $250,000 with the FDIC- R." [*See* MPA in Opp. to Mot. to Remand (Doc. 21) at 2: 15-16.]

This allegation is patently false and squarely addressed in Plaintiff's opposition to Mot. to Dismiss. [*See* MPA in Opp. to Mot. to Dismiss (Doc. 22) at 2-3: 17 - 13.]

1

exception.' Furthermore, interpretation or application of federal law is unnecessary in this case, making remand both justifiable and warranted.

**Point One**

Within the FDIC-Receiver's opposition, it alleges:

*"...Plaintiff fails to plead claims upon which any relief can be granted because he does not own the claims he asserts as a matter of federal banking law."* [*See* MPA in Opp. to Mot. to Remand (Doc. 21) at 4: 27-8.] This assertion is false.

On August 2, 2023, the FDIC-Receiver, **for the first time**, takes the conclusive position;

*"Plaintiff's administrative claim was initially misidentified as a stockholder equity claim……..Upon further review, it was determined that Plaintiff's administrative claim **was not a stockholder equity claim**, but rather a claim against the Receivership **seeking damages based on the tort claims** alleged in the draft complaint."* [*See* MPA in Supp. of Mot. to Dismiss (Doc. 17-1) at 4: 1-10.] (emphasis added)

On August 18, 2023, the FDIC-Receiver reaffirmed its stance;

*"However, the Shareholder Claim Letter did not address, disallow, nor make any determination regarding Plaintiff's claim against the FDIC-R seeking damages based on the tort claims alleged in the draft complaint."* [*See* MPA in Opp. to Mot. to Remand (Doc. 21) at 2-3: 27-1.]

The FDIC-Receiver unequivocally acknowledges that the Plaintiff's claims qualify as "tort claims." The implications of this acknowledgment are elaborated upon herein.[2]

First, as articulated in Plaintiff's opposition to the FDIC Receiver's *Motion to Dismiss* [*See* MPA in Opp. to Mot. to Dismiss (Doc. 22) at 7-9], with respect to

---

[2] Regrettably, Plaintiff is forced to retread old soil, in relevant parts. [*See* MPA in Opp. to Mot. to Dismiss (Doc. 22) at 7-9 and 13-15.]

2

FIRREA's jurisdiction-stripping provision, the Second Circuit "held that, as used in FIRREA's jurisdiction-stripping provision, the word 'claim' is a term of-art and must be construed to mean '**only claims** that could be brought under the administrative procedures of § 1821(d), **not any claim** at all involving the FDIC' or, by implication, the failed bank." *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 501 (S.D.N.Y. 2012); see also *Am. Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1142 (D.C. Cir. 2011) (holding suit against a third-party "for its own wrongdoing, not against the depository institution for which the FDIC is receiver (i.e., Washington Mutual) . . . is not a claim within the meaning of [FIRREA] and thus is not barred") (emphasis added). [3]

Secondly, the FDIC-Receiver persistently contends that the Plaintiff's claims (i.e., direct) against Signature Bank and specific former officers of the bank fall under the jurisdiction of the FDIC-Receiver. [*See* MPA in Supp. of Mot. to Dismiss (Doc. 17-1) at pp. 12 - 13: 27 – 7.]

This assertion is wrong as a matter of law. [*See* MPA in Opp. to Mot. to Dismiss (Doc. 22) at 13-15.]

The FDIC-Receiver has no authority under FIRREA, Second Circuit case law, or the U.S. Constitution to usurp such claims. FIRREA provides only that, as receiver, the FDIC shall succeed to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution[.]" 12 U.S.C. § 1821(d)(2)(A)(i).

This section "transfers to the FDIC only stockholders' claims with respect to….. the assets of the institution—in other words, those that investors . . . would pursue derivatively on behalf of the failed bank." *Levin v. Miller*, 763 F.3d 667, 672 (7th Cir. 2014).

---

[3] Notable, Signature Bank is also accompanied by three separate individual defendants and DOES 1 – 10. [Doc. 1-8, FAC.]

Because of this limitation, courts "read § 1821(d)(2)(A)(i) as allocating claims between the FDIC and the failed bank's shareholders rather than transferring to the FDIC every investor's claims of every description." [Ibid.]

Courts thus routinely distinguish between **derivative claims and direct claims** in determining which shareholder claims the FDIC assumes when a bank fails, and hold that the FDIC assumes **only derivative claims of current shareholders**. See, e.g., *Barnes v. Harris*, 783 F.3d 1185, 1193 (10th Cir. 2015) (concluding that, under FIRREA, the FDIC owned shareholders' derivative claims **but not** shareholders' direct claims); *Lubin v. Skow*, 382 F. App'x 866, 870-71 (11th Cir. 2010) (same); *In re Sunrise Sec. Litig.*, 916 F.2d 874, 889 (3d Cir. 1990) (same). In this present case, Plaintiff has not asserted any derivative claims. [*See* generally, Doc. 1-8.]

Indeed, *Pareto v. F.D.I.C.*, which the FDIC-Receiver cites, applied this critical distinction between direct and derivative claims, noted that plaintiff "did [not] allege he was fraudulently induced to buy or sell stock" (which is exactly what this action concerns), and held that "[p]laintiff did not have standing to assert [his] derivative action against the FDIC and the former directors of the bank." 139 F.3d 696, 700-01 (9th Cir. 1998)(emphasis added).

As the Seventh Circuit in *Levin* observed, "**[n]o federal court** has read [FIRREA]" to "transfer to the FDIC **all claims** held by any stockholder of a failed bank." 763 F.3d at 672. (emphasis added)

Where, as here, a shareholder alleges that defendants made false representations that induced him to pay artificially inflated prices for his stock, see FAC, Doc. 1-8 at ¶¶ 40, 55, "[t]here is no compensable injury to the corporation" and, consequently, the claims are direct—not derivative—and the class retains the ability to litigate them, notwithstanding the FDIC receivership. *Howard v. Haddad*, 916 F.2d 167, 169-70 (4th Cir. 1990); see also *Morrone ex rel. Arotech Corp. v. Erlich*, 2011 WL 1322085, at *5 (E.D.N.Y. Mar. 31, 2011) (holding that where misstatements allegedly artificially inflated a company's stock, "any injury due to these omissions accrued to shareholders individually at the time of purchase.").

Significantly, the FDIC-Receiver does not cite any case where the FDIC has succeeded to shareholders' direct claims under the federal securities laws. This is

4

because courts have consistently held that investors retain the ability to pursue such claims even after a failed bank enters receivership under FIRREA. See, e.g., *Howard*, 916 F.2d at 169-70 (holding that federal securities fraud claims are direct claims not barred by FIRREA); *Hayes v. Gross*, 982 F.2d 104, 109-10 (3d Cir. 1992) (same); *Abrahamson v. W. Sav. & Loan Ass'n*, 1994 WL 374294, at *7 (D. Ariz. Jan. 24, 1994) (same).

Thirdly, in the pertinent sections, the FDIC Receiver distorts the allegations presented in the Plaintiff's First Amended Complaint:

*"……because **all** of Plaintiff's claims against Defendants concern acts that allegedly depressed the value of Signature's assets, left Signature's stock valueless, and thus relate to its assets, the claims belong to the FDIC-R under the plain meaning of section 1821(d)(2)(A)(i)."* [*See* MPA in Opp. to Mot. to Remand (Doc. 21) at 11: 22-25.]

This assertion bears all the hallmarks of sophistry, masquerading as a reasoned legal position. The claim not only fails on its merits but also dares to muddle the legal waters by conflating the allegations against different defendants as if they were all cut from the same unconstitutional cloth.

It is the antithesis of precision to lump all defendants together under a single umbrella of allegations, for not every defendant is a mere clone of the other. To do so would be to take a mallet to a problem that requires a scalpel. Such a blunt approach has no place in jurisprudence, and it reduces the complexity of the case to an unsophisticated simplicity that betrays a fundamental misunderstanding of the law.

For example, according to the Plaintiff's allegations [*See* Doc. 1-8, FAC]:

"As a result of the foregoing, the market price of the Company's securities was artificially inflated during Plaintiff's March 2022 Shares Purchase and March 2023 Shares Purchase period." [Ibid, ¶55]

"Had Plaintiff been aware that the market price of the Company's securities had been artificially inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, he would not have purchased the Company's securities at the artificially inflated prices that he did, or at all." [Ibid., ¶56]

"Said differently, Defendants actively concealed concerns raised by the FDIC by issuing their March 2 Update and March 9 Update to artificially excite the public, and SBNY shareholders, including residents of California and Plaintiff." [Ibid., ¶92]

"Individual Defendants' failure of adequate asset liability management, their failure to disclose their ineptness management of risk, while simultaneously selling SBNY stock from their personal holdings, fueled their need to artificially inflate the public's, including Plaintiff's, view of the welfare of the Company." [Ibid., ¶102]

"Prices paid by Plaintiff for the March 2022 Shares Purchase and March 2023 Shares Purchase were artificially inflated due to Defendants' conduct complained herein." [Ibid., ¶104]

"The Defendants personal wealth benefitted from the Company having an artificially inflated stock price." [Ibid., ¶105]

"The concealment was intentional with intent to defraud Plaintiff. Defendants made the misrepresentations, and omissions with the intent and purpose of inducing actions by the public, residents of California, to include Plaintiff, inducing the purchase of SBNY stock. By creating buyers for the SBNY stock, the price of the security remained artificially inflated. When making the false representations and said omissions, Defendants knew that members of the investing public, residents of California, including Plaintiff, would rely on the representations to their detriment." [Ibid., ¶147]

"Defendants aided and conspired with one another, to artificially inflate SBNY's stock price and fabricate confidence in the Company's financial viability." [Ibid., ¶165]

**Not** "all the Plaintiff's claims" against the Defendants pertain to acts that allegedly devalued Signature's assets; some claims focus on the devaluation of these assets, while others address acts that artificially inflated stock prices. The distinction between devaluing assets and inflating stock prices is materially significant and simple to grasp.

Fourthly, as briefly discussed *infra*, the FDIC-Receiver has not logged an appearance on behalf of all Defendants, thereby failing to encompass the full scope and essence of the complaint.

Fifthly, the authority on which FDIC-Receiver relies does not counsel otherwise. It cites *Zucker v. Rodriguez*, 919 F.3d 649 (1st Cir. 2019), yet *Zucker* is inapposite—it was not a case "alleging fraud or one to enforce the securities laws," but rather claims for negligence and breach of fiduciary duty. [Ibid. at 660] (recognizing policy considerations, including maintaining private parties' incentive to bring securities fraud claims). The district court held those claims belonged to the FDIC, but cautioned that its ruling was "a limited one" that "applies only to claims like those before [the court]," "do[es] not establish any broader principles," and that "future claims by

holding companies and other shareholders of banks in FDIC receivership will need to be evaluated on their own terms." [Ibid. at 656.]

**Point Two**

As previously cited, although the FDIC usually sues in federal court and has the right to remove most actions to federal court, state law, rather than federal common law, generally governs claims and defenses. As the receiver, the FDIC assumes a bank's claims and becomes subject to defenses against these claims. [*See* MPA in Supp. of Mot. to Remand (Doc. 18) at 9: 4-7.]

Despite not formally representing all Defendants, the FDIC-Receiver has submitted an argument that benefits the entire defendant collective, in relevant part:

*"Here, the FDIC-R has at least three independent substantive defenses, which are applicable to **all Defendants**, that require interpretation and application of federal law, thus rendering the state law exception inapplicable."* [*See* MPA in Opp. to Mot. to Remand (Doc. 21) at 7: 17-19.] (emphasis added)

Also previously cited by Plaintiff, Courts have upheld the application of state law rather than federal common law regardless of whether a bank is federally-or-state chartered and, in *Atherton v. FDIC* [4] the Supreme Court affirmed the view that state law was applicable, unless a specific federal law established a higher standard of conduct. [5] [*See* MPA in Supp. of Mot. to Remand (Doc. 18) at 9: 7-10.]

First, as previously cited by Plaintiff, the Supreme Court and the Ninth Circuit are clear: "State courts resolve matters of federal law in similar circumstances with no difficulty; neither an affirmative defense based on federal law, nor one based on federal preemption, renders an action brought in state court removable." *Berg v. Leason*, 32 F.3d 422, 426 (9th Cir. 1994), citing *Merrell Dow*, 478 U.S. at 808; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987). This is true

---

[4] *Atherton v. FDIC*: 519 U.S. 213 (1997).

[5] See JOHN K. VILLA, BANK DIRECTORS', OFFICERS' AND LAWYERS' CIVIL LIABILITIES § 1.02[A] (2004-2 Supp. 2004).

"even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 12. [6]

Secondly, under FIRREA, the statutory scheme provides that the FDIC owes a duty solely to depositors, creditors and the public at large, not to a bank or its former directors and officers. *See*, e.g., 12 U.S.C. § 1821(d)(2)(J)(ii) (FDIC must determine the best interests of the depository institution and its depositors); 12 U.S.C. § 1821(p)(1)(B) (FDIC is prohibited from selling bank assets to officers or directors of a failed bank); *FDIC v. Raffa*, 935 F. Supp. 119, 123 (D. Conn. 1995)(holding that the FDIC's "regulatory oversight of banks is intended only to protect depositors, the insurance fund and the public."); *FDIC v. Mijalis*, 15F.3d 1314, 1324 (5th Cir. 1994) ("conduct of the FDIC 'should not be subjected to judicial second guessing,' . . . because the FDIC owes no duty to failed financial institutions or to their former directors and officers") (citation omitted).

The issue is straightforward: The FDIC-Receiver cannot advocate for all defendants while insulated from incurring liabilities that are presently aimed only at the individual defendants.

Demonstrating this point, Courts in recognition that the FDIC owes no duty to former directors and officers of failed banks, have held that affirmative defenses including estoppel, waiver and release, unclean hands, failure to mitigate damages, contributory and comparative negligence, supervening events, ratification by regulators, and assumption of risk, are not available against the FDIC in its pre - and post-receivership capacities. See *Federal Deposit Ins. Corp. v. Anders*, No.S-87-430 EJG/PAN, 1991 U.S. Dist. LEXIS 20411, at*17-19 (E.D. Cal. July 1, 1991) (striking the affirmative defenses of contributory and comparative negligence, failure to mitigate, estoppel, waiver and release, ratification, indemnity, unclean hands, assumption of the risk, and supervening events); *Saratoga Sav. & Loan Asso. v. Federal Home Loan Bank*, 724 F. Supp.683, 688 (N.D. Cal. 1989) (The "federal government's exercise of its regulatory or supervisory functions over insured financial

---

[6] *See* MPA in Supp. of Mot. to Remand (Doc. 18) at 10: 6-13.

8

institutions does not give rise to an actionable tort duty on favor of the regulated institution or its shareholder."); *FDIC v. Crosby*, 774 F. Supp. 584,586 (W.D. Wash. 1991) (holding that the defendants were not entitled to affirmative defenses of comparative negligence or failure to mitigate damages); *FDIC v. Collins*, 920 F. Supp.30, 33-35 (D, Conn. 1996) (holding that the affirmative defense of estoppel is barred by the "no duty" rule); *FDIC v. White*, 828 F. Supp. 304,308-12 (D. N.J. 1993) (striking the affirmative defenses of contributory negligence, failure to mitigate, ratification, causation, estoppel, waiver, and unclean hands); *FDIC v. Heiserman*, 839 F.Supp. 1457, 1467-68 (D. Colo. 1993); *RTC v. Youngblood*, 807 F. Supp. 765, 771-74 (N.D. Ga.1992) (striking the affirmative defenses of "estoppel, negligence, contributory negligence, comparative negligence, assumption of risk, acts or omissions by RTC or its predecessors, commercially unreasonable actions by RTC or its predecessors, and failure to mitigate damages . .."); *FDIC v. Ernst & Whinney*, No. 3-87-0364, 1992WL 535605, at *2-4 (E.D. Tenn. May 19, 1992)(upholding decision striking affirmative defenses of failure to mitigate and avoidable consequences); *FDIC v. Lowe*, 809 F. Supp. 856,857-58 (D. Utah 1992) (holding that the affirmative defenses of estoppel, laches, unclean hands, failure to mitigate damages fail as a matter of law); *FDIC. v. Butcher*, 660 F. Supp. 1274, 1282 (E.D.Tenn. 1987) (holding that the no duty rule barred the affirmative defenses of contributory negligence, estoppel, and mitigation of damages).

The assertion that the interpretation and application of federal law are required remains unfounded.

**Point Three**

The FDIC-Receiver contends:

*"Thus, the state law exception does not apply here because Plaintiff's claims are based on California law, not New York law."* [*See* MPA in Opp. to Mot. to Remand (Doc. 21) at 13: 2-3.] Nonsense (respectfully).

As cited *supra*, and affirmed by the Supreme Court, state law is applicable regardless of whether a bank is federally-or-state chartered. [*See* Point Two *supra*, *Atherton v. FDIC.]*

9

The FDIC- Receiver's opposition was not only mute on these well settled legal precedents, but the FDIC-Receiver also attempts to invert well settled jurisdictional law.

As previously presented by Plaintiff [*See* MPA in Opp. to Mot. to Dismiss (Doc. 22) at 9-13], the undisputed facts support the assertion Signature Bank has purposefully availed itself of the privileges of conducting business in the state of California.

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (quoting *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017)). "California authorizes its courts to exercise jurisdiction 'to the full extent that such exercise comports with due process.'" Id. (citing Cal. Civ. Proc. Code § 410.10). Cal. Civ. Proc. Code § 410.10 provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

Accordingly, "the jurisdictional analyses under [California] state law and federal due process are the same." *Axiom Foods*, 874 P.3d at 1067 (quoting *Mavrix Photo*, 647 F.3d at 1223).

Signature Bank has relationship with California and has performed acts which implicate California law or the California long-arm statute. Signature Bank is registered to do business in the State of California; conducts and transacts business in the State of California; owns, leases, or manages real property in the State of California; has bank accounts in the State of California; insures persons and entities in the State of California; has employees in the State of California; and pays taxes in the State of California. Signature Bank has purposefully availed itself of the privilege of conducting business in the State of California. [Doc. 1-8, FAC, ¶¶ 4-5, 13.]

### Point Four

The FDIC-Receiver is attempting to formulate arguments that their previous determination (i.e., its denial) of the Plaintiff's claim is now irrelevant. The FDIC-Receiver cannot oscillate between different positions, when convenient.

The Court was informed by the FDIC-Receiver that it purportedly has jurisdiction over removal. The FDIC-Receiver could not have taken such a stance, prior to denying Plaintiff's claim. Unless there is a dramatic reinterpretation of the law, this

procedural fact warrants further justification for the granting of Plaintiff's motion to remand.

The FDIC-Receiver acknowledged the resolution of Plaintiff's administrative claim by definitively declaring before the Court, in pertinent part, that "[v]enue for purposes of removal only lies with this Court, pursuant to 28 U.S.C. § 1441(a) and 1446(a)." [Doc. 1; 4: 10 – 11.]

In accordance with 12 U.S.C. § 1821(d)(13)(D);

(D) Limitation on judicial review;

The **court shall not have jurisdiction** over— (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver. (emphasis added)

Put simply, the parties are in this Court solely due to the actions of the FDIC-Receiver. On one hand, the FDIC-Receiver asserts that this Court has the authority (i.e., "[v]enue for purposes of removal only lies with this Court") when it suits their interests. On the other hand, they are now attempting to invoke a procedural mechanism associated with the FIRREA claims process, thereby depriving this Court of any authority under 12 U.S.C. § 1821(d)(13)(D). This approach is not only prejudicial to the Plaintiff but also constitutes a waste of valuable judicial resources.

If the FIRREA claims process were not yet complete, the FDIC-Receiver would have been required to inform the State Court, as mandated by 12 U.S.C. § 1821(d)(13)(D) – "no court shall have jurisdiction.." The absence of such notification strengthens the Plaintiff's argument that the FIRREA claims process has already been exhausted.

### Point Five

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means that the

defendant always has the burden of establishing that removal is proper." Id. at 566. **Any doubt as to whether the removal is proper should be resolved in favor of remand to state court.** See 28 U.S.C. § 1447(c). [*See* MPA in Supp. of Mot. to Remand (Doc. 18) at 7 - 8: 26-4.] (emphasis added)

The FDIC-Receiver has failed to present a "colorable" federal defense to justify removal; *Lazuka v. FDIC*, 931 F.2d 1530, 1534-35 (11th Cir. 1991); *Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 657, 1996 U.S. App. LEXIS 18307, *16.

As any devoted textualist would assert, clear legal language must be followed precisely, akin to a dance choreographed by the legislature. Therefore, FDIC-Receiver's lacking any viable federal defense is not merely a minor misstep; it's akin to stepping completely out of bounds.

## II. CONCLUSION

The Plaintiff respectfully requests that the Court grant Plaintiff's motion to remand in its entirety and such other and further relief as is just and appropriate.

DATED:   September 4, 2023

Respectfully submitted,

*/s/ Cameron N Verdi /s/*
Cameron N Verdi
Plaintiff

## CERTIFICATE OF COMPLIANCE

The undersigned, for Plaintiff Cameron N. Verdi certifies that his reply brief, contains 3,705 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 4, 2023

Respectfully submitted,

*/s/ Cameron N Verdi /s/*
Cameron N Verdi
Plaintiff

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of September 2023 I caused the foregoing document described as PLAINTIFF CAMERON N. VERDI'S REPLY IN SUPPORT OF MOTION TO REMAND to be submitted for electronic filing through the Court's CM/ECF system and accordingly served on all parties' counsel of record having a CM/ECF electronic filing account. The aforementioned document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Counsel of record are requested to be registered e-filers, and, as such, are automatically e-served with a copy of the documents upon confirmation of filing.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

EXECUTED this 5th day of September 2023, at Newport Beach, California.

*/s/ Cameron N Verdi /s/*

Name: Cameron N Verdi